OPINION
Defendant, Stephen Haldeman, appeals from his conviction and sentence on three counts of criminal trespassing and one count of voyeurism.
On October 10, 1999, around 11:00 p.m., Det. Bilinski of the Dayton Police Department was at his home located at 4903 Peppercreek Court, Dayton, Ohio, when he heard a vehicle with a loud muffler. Bilinski looked out a window at the rear of his home and observed a white Toyota traveling down Sweetleaf Drive.
Ten minutes later, Bilinski heard that same car again. This time Bilinski observed the car on Peppercreek Court directly in front of his home. Det. Bilinski immediately got into his unmarked police cruiser, caught up with the white Toyota, and ran the license plates. After learning that the registered owner was Defendant, Stephen Haldeman, whom Bilinski did not know, Bilinski returned home.
Approximately ten minutes later, Det. Bilinski heard what sounded as the same vehicle a third time. When he looked out the rear of his home Bilinski observed Defendant's vehicle, the white Toyota, proceeding very slowly down Sweetleaf Drive with its headlights off. Bilinski watched as Defendant parked near Robert Whitman's home, and then got out and walked to the backyard. Defendant walked up very close to the rear of the Whitman home and then, putting his hands up around his face, Defendant attempted to look in the back window.
Concerned that Defendant might be preparing to break into the Whitman home, Det. Bilinski retrieved his gun, handcuffs and police radio, and had his wife call Dayton police officer Mark Cordell, who lives next door to Bilinski. Once outside, Bilinski observed Defendant cut through his yard and enter Herb Rogers' yard. Bilinski met Officer Cordell outside and they began watching Defendant's vehicle. When Defendant approached his vehicle a few minutes later, Det. Bilinski approached Defendant and identified himself., Defendant immediately ran but was quickly apprehended and arrested by Det. Bilinski. In the course of subduing Defendant, Bilinski discovered that Defendant was wearing a black bra. On the front passenger seat of Defendant's vehicle police discovered a vibrator that was out of its package and several pornographic magazines. While being booked into jail on charges of voyeurism and criminal trespassing, police discovered that Defendant was also wearing in addition to the bra, black women's panties, pantyhose and a garter belt., Defendant was charged in Dayton Municipal Court with three counts of criminal trespassing in violation of Dayton Revised Code General Ordinances Section 133.05 and one count of voyeurism in violation of R.C. 2907.08. Defendant elected to be tried by the court without a jury.
Prior to trial, Defendant filed a motion in limine seeking to exclude the items recovered from his vehicle and the women's clothing he was wearing at the time of the offense. The trial court overruled Defendant's motion following a hearing,
Defendant was tried by the court and found guilty of all charges. The trial court sentenced Defendant to a term of imprisonment and imposed a fine for each and every count, but suspended the jail terms on condition that Defendant complete eighteen months of supervised probation with counseling., Defendant has timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION TO DISMISS PURSUANT TO CRIMINAL RULE 29 AT THE CONCLUSION OF THE PROSECUTION'S EVIDENCE AND FURTHER THE VERDICT OF THE TRIAL COURT FINDING THE APPELLANT GUILTY OF VOYEURISM IN VIOLATION OF R.C. 2907.08 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW., Defendant was convicted of voyeurism in violation of R.C. 2907.08(A), which states:
No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another, to spy or eavesdrop upon another.
When considering a Crim.R. 29 motion for acquittal, the trial court must construe the evidence in a light most favorable to the State and determine whether reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261. Themotion will be granted only if reasonable minds could only conclude thatthe evidence fails to prove all of the elements of the offense. Statev. Miley (1996), 114 Ohio App.3d 738.
A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Statev. Thompkins, (1997), 78 Ohio St.3d 380. The proper test to apply tosuch an inquiry is the one set forth in paragraph two of the syllabus ofState v. Jenks (1991), 61 Ohio St.3d 259:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The State relied on circumstantial evidence, the women's undergarments that the Defendant wore and the articles found in his car, to prove that his purpose in peering into a window while trespassing on Robert Whitman's property was to sexually arouse or gratify himself. Defendant argues that this evidence was insufficient for conviction of the offense charged, for two reasons.
First, Defendant argues that the evidence is not irreconcilable with any reasonable theory of innocence and consistent only with the State's theory of guilt, a requirement imposed on circumstantial evidence inFairfield v. Deranger (July 28, 1986), Butler App. No. CA86-01-003,unreported. That decision relied on State v. Kulig (1974),37 Ohio St.2d 157, which had adopted the same rule of law. However,Kulig was subsequently reversed by State v. Jenks (1991),61 Ohio St.3d 259. Acknowledging that fact and its effect on this particular argument, Defendant waived it at oral argument before this court. Therefore, we need not rule on the claim involved.
Second, Defendant argues that the evidence the State presented is insufficient to prove the purpose alleged, sexual arousal or gratification. He points out that no one was in the room into which he peered, which was darkened, and that his behavior cannot support a rational inference that he had the purpose alleged.
The purpose which voyeurism invokes, sexual arousal or gratification, is typically proved by evidence that the accused was in a state of undress and/or had engaged in masturbation while peering into a home or other building at people inside. The fact that no one was in the room into which Defendant peered does not prevent a finding that he had that purpose. A purpose unaccomplished is a purpose nonetheless. The fact that Defendant was neither in a state of undress nor had engaged in masturbation does not prevent a finding that his purpose was sexual gratification or arousal, if that can rationally be inferred from other evidence presented.
The woman's undergarments that the Defendant wore offer scant support for the proposition that his purpose was sexual arousal or gratification when he peered into the room of Robert Whitman's home. However, the items found in his car, which are commonly employed in auto-erotic behavior, do support a conclusion that he had that purpose. Defendant had just left the car, and he presumably intended shortly to return to it. When he peered into the window, Defendant could very well have been in search of some delectation to arouse him during an auto-erotic episode in which he hoped subsequently to engage.
The foregoing conclusions, which support the purpose that a voyeurism offense involves, depend on inferences, but that is the nature of circumstantial evidence and the legitimate object of its use. Circumstantial evidence is on a par with direct evidence. State v.Jenks, supra. The test is what an ordinary, prudent person would ascribeto the conduct involved. State v. Horrigan (Feb. 19, 1999), Montgomery App. No. 17260, unreported. Sexual impulses may be a mystery, but the sexual behavior that some conduct involves is not. The trial court could rationally infer from the evidence before it that Defendant had the purpose that a voyeurism offense involves when he peered into the window of Robert Whitman's home., Defendant additionally asserts that his conviction is against the manifest weight of the evidence.
A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6,1996), Montgomery App. No. 15563, unreported. The proper test to applyto that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported., Defendant suggests that his conviction for voyeurism is against the weight of the evidence because there is a conflict between the testimony of Det. Bilinski and Robert Whitman as to whether there was a light on inside the rear of the Whitman home. Bilinski testified that he observed a light on inside that home, while Whitman testified that there probably was not a light on, but he wasn't certain. Whitman did note that there was a light left on in the kitchen area that would shine through to the rear portion of his home.
This evidence, assuming it can even be characterized as conflicting, is not crucial in terms of proving the elements of voyeurism. Moreover, it was for the court to decide, as trier of fact, which witnesses to believe and the weight to be given to their testimony. State v. DeHass (1967),10 Ohio St.2d 230. In reviewing this entire record, we cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way, or that a manifest miscarriage of justice occurred. Defendant's conviction is not against the manifest weight of the evidence.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY DENYING THE APPELLANT'S MOTION IN LIMINE REQUESTING THE TRIAL COURT TO PROHIBIT THE PROSECUTION FROM ASKING ABOUT AND/OR INTRODUCING INTO EVIDENCE THE ITEMS SEIZED FROM THE APPELLANT'S MOTOR VEHICLE AND HIS PERSON., Defendant filed a motion in limine prior to trial seeking to prohibit the State from introducing the articles of women's underclothes he wore and the vibrator and pornographic magazines found on the front seat of his car. Defendant argued that these items were inflammatory, prejudicial, and not relevant to prove the elements of the charged offense. The trial court concluded that these items were relevant to prove the mens rea element of voyeurism, and that their probative value outweighed the dangers of unfair prejudice. Accordingly, the trial court held that these items were admissible, and overruled Defendant's motion in limine., Defendant did not object when Officer Carlson testified concerning the women's underclothes Defendant wore, and the items recovered from his vehicle. However, Defendant did object when the State offered those items into evidence. The trial court overruled Defendant's objection and admitted the bra, panties and pantyhose Defendant was wearing, as well as the vibrator and pornographic magazines recovered from Defendant's vehicle. Defendant argues that the trial court erred in admitting this evidence.
The admission or exclusion of evidence rests within the sound discretion of the trial court, and its decision in such matters will not be disturbed on appeal absent a showing that the trial court abused its discretion and Defendant was prejudiced. State v. Long (1978),53 Ohio St.2d 91. An abuse of discretion connotes more than a mere errorof law or an error in judgment. It implies an arbitrary, unreasonable,unconscionable attitude on the part of the trial court. State v. Adams
(1980), 62 Ohio St.2d 151.
Relevant evidence is defined in Evid.R. 401:
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
We agree with the trial court that the bra, panties and pantyhose that Defendant wore, and the vibrator and magazines recovered from the front seat of Defendant's vehicle were relevant to prove the mens rea element of voyeurism. Such evidence has a tendency to make it more probable that Defendant trespassed "for the purpose of sexually arousing or gratifying himself." R.C. 2907.08(A). Moreover, the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). The trial court did not abuse its discretion in admitting this evidence.
The second assignment of error is overruled. The judgment of the trial court will be affirmed.
 _____________________ GRADY, P.J.,
WOLFF, J. and GLASSER, J., concur.
Hon. George M. Glasser, Retired from the Court of Appeals, Sixth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.