OPINION
{¶ 1} Defendant, Kerry McDonald, appeals from his conviction and sentence for breaking and entering.
 {¶ 2} On September 5, 2006, Stephani Osborn and Joseph Winston, two Dayton Public Schools groundskeepers, were assigned to work at Roosevelt High School, which is located at *Page 2 
2013 W. Third Street in Dayton. That school has been closed for three years and is scheduled for demolition.
 {¶ 3} At approximately 8:00 a.m., Osborn and Winston observed two men, Defendant McDonald and Joe McNeal, near the front doors of the school. Both men subsequently walked over to some bushes adjacent to the building. From those bushes McNeal pulled out a shopping cart full of various scrap metals including copper, and started to walk away, pushing the cart. Defendant helped McNeal lift the cart off the grassy area and up onto the sidewalk. Both men then walked with the cart toward downtown Dayton.
 {¶ 4} Osborn called her supervisor, Mark Pierson, and told him that she suspected the two men had removed materials from the school. Pierson told Osborn to follow the two men while he contacted Dayton police.
 {¶ 5} Osborn followed the two men for thirty minutes until police arrived and stopped them. Pierson arrived and accompanied police on a walk around Roosevelt High School, identifying a broken window as a possible point of entry. An inspection of the school disclosed that one of the front doors, near where Defendant was first observed, was unlocked and partially open. That door could be opened only from the inside. Furthermore, the interior of the school had been *Page 3 
vandalized and damaged by the removal of metal pipes, metal doors, and other metal components, including copper. Pierson identified the scrap metal in the shopping cart that McNeal was pushing as having come from the school.
 {¶ 6} Defendant was indicted on one count of breaking and entering in violation of R.C. 2911.13(A), a felony of the fifth degree. Defendant waived his right to a jury trial and was tried by the court and found guilty. The trial court sentenced Defendant to seven months in prison.
 {¶ 7} Defendant has timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR {¶ 8} "WHETHER DEFENDANT'S CONVICTIONS AND SENTENCE WERE SUPPORTED BY SUFFICIENT QUALITATIVE AND QUANTITATIVE EVIDENCE, ERRONEOUS AS A MATTER OF LAW, AND THEREBY VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION."
 {¶ 9} Defendant argues that his conviction for breaking and entering is not supported by legally sufficient evidence and is against the manifest weight of the evidence because there is no evidence that he trespassed inside Roosevelt school or that he had a purpose or intent to commit a theft *Page 4 
offense. We disagree.
 {¶ 10} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 12} Defendant was found guilty of violating R.C. 2911.13(A), in that he by force trespassed in an unoccupied structure, Roosevelt School, with purpose to therein commit a theft offense.
 {¶ 13} In support of his argument that there was no evidence presented to show that he actually entered Roosevelt *Page 5 
School or that he had a purpose to commit a theft offense, Defendant relies upon the fact that no one saw him inside that school building or saw him take anything out of that school. Defendant's argument, however, conveniently ignores the fact that circumstantial evidence and direct evidence possess the same probative value, State v. Jenks, supra, at 272, and therefore circumstantial evidence, like direct evidence, can support a finding of proof beyond a reasonable doubt if the trier of facts so finds. Circumstantial evidence is proof of a fact, from which the existence of other facts reasonably may be inferred. Furthermore, circumstantial evidence does not have to be irreconcilable with any reasonable theory of innocence. Id.
 {¶ 14} The evidence presented by the State demonstrates that Roosevelt School was closed and no one had permission to be inside. Just a day or two prior to this incident, Pierson had checked the property and found nothing out of the ordinary. Defendant and McNeal were both observed by groundskeepers for Dayton public schools near the front doors of the school, with Defendant coming from behind a pillar near a front door that had been unlocked and opened from the inside. McNeal was observed retrieving a shopping cart from bushes adjacent to the school. That cart contained $400-$600 *Page 6 
worth of scrap metal, including copper, that had been stripped from inside the school. Behind the bushes were several metal interior doors that had also been removed from the school.
 {¶ 15} Defendant was observed helping McNeal lift the shopping cart full of scrap metal up over the curb and onto the sidewalk. Both men were then observed for thirty minutes walking together toward downtown Dayton, with McNeal pushing the cart. An inspection of the school disclosed that the possible point of entry was a broken window and that the inside of the school had been vandalized and damaged by the removal of metal pipes, doors and other metal fixtures. Although McNeal denied entering the school, he admitted to police that he regularly hunts for scrap metal, that he knew the scrap metal in the shopping cart was stolen, and that he was taking it to a scrap yard to sell it.
 {¶ 16} Viewing this evidence in a light most favorable to the State, it is sufficient to give rise to a reasonable inference that Defendant by force trespassed inside Roosevelt School with purpose to commit therein a theft offense, that is, that Defendant forcibly entered the school to steal scrap metal for resale. Accordingly, a rational trier of facts could find Defendant guilty beyond a reasonable doubt of breaking and entering in violation of R.C. 2911.13(A). *Page 7 
Defendant's conviction is supported by legally sufficient evidence.
 {¶ 17} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 {¶ 18} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins, supra.
 {¶ 19} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 20} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the *Page 8 
discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 21} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 22} Defendant testified in his own defense that he had never met McNeal before, and although he helped McNeal get his cart over the grassy area and up onto the sidewalk he never entered the school or stole any metal therefrom and had no knowledge of any break-in or theft at the school. Defendant claimed that he only walked with McNeal because they were both going in the same direction.
 {¶ 23} McNeal testified at Defendant's trial and he likewise denied entering the school. McNeal claimed that he found the shopping cart sitting outside the school already fully loaded with scrap metal, and he took it as his own. *Page 9 
McNeal testified that Defendant didn't have anything to do with the cart full of scrap metal other than helping him lift it up off the grassy area. McNeal told police, however, that he retrieved the scrap metal from a dumpster.
 {¶ 24} At oral argument, Defendant-Appellant contended that, on the weight of the evidence and due to the reasonable doubt standard, he was entitled to a judgment of acquittal because the inferences which may reasonably be drawn from the circumstantial evidence on which the State relied could support a finding of innocence as well as the finding of guilt the court reached. That contention relies on the same view that was expressed, albeit in different terms, in State v. Kulig (1974),37 Ohio St.2d 157: "Circumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." Syllabus by the Court.
 {¶ 25} The holding in Kulig was expressly overruled by the holding inState v. Jenks:
 {¶ 26} "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential *Page 10 
element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required. (Holland v.United States [1954], 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, followed; State v. Kulig [1974], 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, overruled.)" Syllabus by the Court, paragraph one.
 {¶ 27} Per Jenks, the court was free to give such weight as it mightto the circumstantial evidence before it. The trial court did not loseits way in this case simply because it found the State's version of theevents to be more credible than Defendant's version. In findingDefendant guilty the trial court, the trier of facts, specifically foundthat the testimony of Defendant and McNeal was not credible or worthy ofbelief, which it could do. DeHass. Reviewing this entire record we cannot say that the evidence weighs heavily against a conviction, that the court lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence. *Page 11 
 {¶ 28} The assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, J. And DONOVAN, J., concur.
Copies mailed to:
Johnna M. Shia, Esq.
Richard A. Nystrom, Esq.
 Hon. Dennis J. Langer *Page 1